May it please the Court, Assistant Federal Defender Daniel Broderick on behalf of Petitioner Michael Corjasso. I will also try to reserve two minutes for rebuttal. With respect to the issue of ineffective assistance of counsel, the unreasonably applied law is Strickland, as this Court has discussed this morning at length. The first prong of Strickland with respect to Mr. Corjasso's case, defense counsel was present when Juror Hill first initially failed to answer the judge's question whether she was a client of the prosecutor's law firm. Second, he was present when she lied to the judge when he directly asked her, did you call the law firm last night? Answer, no. And third, she lied about how long it had been since the law firm had represented her. So faced with these facts and the other facts that are in the record, a reasonably effective trial attorney would have forced some kind of inquiry into why was she not telling the truth. Ms. Hill, the judge just asked you whether you called the law firm last night, and you answered no. Why did you say that? Respondent's counsel has speculated, as the magistrate judge did, on all sorts of possible reasons why she might have lied, but these are all speculation because the defense counsel did not ask her or ask the judge to ask her why she was not telling the truth. When confronted with a juror who repeatedly fails to answer questions truthfully, a reasonably effective defense counsel in a first-degree murder case would have asked the judge why, to find out why she was not answering these questions truthfully. Now, the second prong of Strickland is the prejudice prong, whether the defense counsel's ineffectiveness prejudiced Mr. Corcioso. Short answer to this is yes, and I think as this Court recognized in Dyer v. Calderon, when confronted with a lying juror, Mr. Corcioso, not the defense, Mr. Corcioso has a right to have the circumstances of those lies inquired into. Every single case, including every case cited by the Respondent in their brief, says, for example, Williams v. Taylor, the Supreme Court case, they remanded that case for an evidentiary hearing to determine why the juror in that case was not forthcoming with truthful answers. And in that case, one of the ones was she just didn't say that she had engaged the prosecutor in an uncontested divorce, but it was remanded for an evidentiary hearing to determine why did she not give that information. In Fields v. Woodford, in this Court, it was remanded for an evidentiary hearing. In Dyer, all of the courts, even though there was a split on the ombud court, every member of the court seemed to acknowledge that there had to be an inquiry made. The difference between the judges in this Court was some judges thought that the State court had done a proper inquiry, and other judges thought that the Federal court needed that that inquiry was insufficient, that a lengthier inquiry had to be determined. But in Mr. Corgiasso's case, there could be no further inquiry. Juror Hill is deceased. And because of the Fed ---- But there can be inquiry now. I'm sorry, Your Honor. There can now be inquiry, not as to why Hill lied, but as to whether and why the attorney didn't make further inquiry. I mean, one possibility is that they didn't make further, for some reason he really wanted this juror on the jury. It's possible, Your Honor, although ---- and I think, Your Honor ---- Given the fact that the ---- it seems to me the conflict, if there was one, or the ---- was much milder than in most of these cases, you know, it's perfectly possible that a competent lawyer would say, you know, I just don't care about this. I think this juror is going to be a really good juror for us. We don't know that. There's nothing in the record at this point except this conflicted statement about whether they wanted women on the jury. Well, no, that's not correct, Your Honor. First, I can't agree with your premise that it would be conceivably reasonable that a defense counsel in a first-degree murder case would accept a lying juror, period. That, I think, as this Court recognized in Dyer, when a juror lies for the ---- even for the purpose of just staying on the jury, that that jury seems to be partial. He was there, and he could have seen her as confused rather than lying, it seems to me. I mean, she came out in the same sentence. First, she says, no, it's not me. I dealt with your associate. So that certainly would suggest or could suggest to somebody who was physically present that she was confused more than she was lying. That was the initial voir dire. Right. That was the initial voir dire. And at the initial voir dire, after that happened, what specifically happened is the trial court said to Ms. Hill, well, we're concerned that you're still not a client of this law firm. And then he says, so we're going to go on, and they do voir dire. Then having been alerted to that, alerted to that is the concern of the trial court, whether or not she's still a client of that firm, which in California law she was, but whether or not she's still a client of that firm. Then we get in the middle of trial, and she calls the firm for legal advice. So, and then, and you're also, Your Honor, I agree with you that you could remand it back for a hearing. I should indicate, though, that it's not correct. The second part of your answer is that there's a declaration from the counsel and a declaration from the attorney. The only thing the attorney says in his declaration, and we've not had the opportunity to cross-examine him on any of that, but the only thing he says is that he wanted he and Mr. Corgiasso wanted women on the jury. That's the only thing he gives. He does say that he discussed it with Mr. Corgiasso. And Mr. Corgiasso says they never did. Right. And he says they never did. And, in fact, that's where the transcript is also evidence in and of itself, because the transcript, particularly, particularly the transcript in the middle of trial, when you look at the transcript in the middle of trial, there's no break, there's no off record, there's no indication, not even a hint, not even a whisper of a hint, that at any time did defense counsel turn to Mr. Corgiasso at all. He instantly goes into what he says, instantly doesn't have a problem. So there's no consultation reflected at any time anywhere in the transcript. But what's more important is that when we look, and I think it was in tab 6 to our left, when we look at the transcript in tab 6, this is the only alternate remaining who was a female juror. That's the only alternate left. And where does that appear? I know you said that. I had trouble. At one point there was a list, there were three alternates, there was a man, two women, and then what? Right. In fact, right. Tab 6, what actually happened is they initially had three alternates, and that's the first page of tab 6. And they indicated it's a male and then two women. And then when you turn to the second page, it turns out that the third woman, Anna Fabriazzo, had to be accused for some, had to be let go because she had a hardship. And then, so he swears in, and then another juror, I'm sorry, a sitting juror and the third alternate had to be excused. And so Mr. Lusk was moved up onto the jury, leaving only one alternate left, Ms. Justesen. She was the only one left. And then when we turn to the last page of tab 6, what we see is when the jurors were actually out to deliberate, the judge specifically addresses her as the only remaining alternate and says, we appreciate your being here, but we don't need you now because we're going to deliberate. So she was the only thing left. And so it was a female. So his only explanation, his only explanation for females just doesn't fly under the facts of this case. So you're asking for a remand or an evidentiary hearing? Well, actually, I think the worst that could happen, yes, Your Honor, I agree. The worst that could happen would be a remand for that. Suppose there's a remand, there's a hearing, and the lawyer says, yes, I talked to them about it, and we decided it was better to go with this person, that the contacts were not that substantial or whatever, and it was okay with us. We kind of liked the juror. She smiled at me a couple of times. I kind of liked her, so we're going to leave her on. Now, if that happens, then there's no effect on the counsel's office there. Well, then there has to be a credibility determination by the judge. Right. Or would we look at it independently and we'd say, well, you know, this is such a lying juror as opposed to one who's simply confused, however we come out on that. But it really doesn't matter what the lawyer said to his client and what the client may have agreed to. This was not a fair jury. Right. Do we ever get to that, or is it strictly an ineffective assistance of counsel question? I don't think it's strictly an effective assistance, Your Honor. And one of the reasons I don't think is because I think what this Court's holding or tenor or however you want to phrase it in Dyer and in all the other cases is that the trial court has a sua sponte duty, independently of the defense counsel, to make sure that the jury is impartial. Well, you have two points to your appeal. Right. I was going to get to that one. Your first point is a due process point, which is what Judge Thompson is asking about. Right, right. That in any event, this is an unfair trial because it's a biased juror. Exactly correct, Your Honor. I wanted to make one correction. Only if you lose that argument would we get to ineffective assistance. Right. That's exactly right. In your oral argument, you started with point two. I shifted it back. That's all right. I'm not complaining. You may have a reason for it, whatever it is, but it may be, you know, you may feel needed more explication. Right. I wanted to correct one thing that I made an error in my opening brief, and I apologize to the Court. I had indicated on page 22 of my brief that California Penal Code section 1074 was still in effect during Mr. Corgiasso's trial. In fact, that statute had been repealed in 1988. And why that's important is because it struck me as odd when both time, during this trial, the trial court had said to, when this came up, that there's a statute in California that doesn't allow the prosecutor's client to be on a jury. And the judge said that. At no time does the defense counsel ask what's that statute or look into it or any of that kind of stuff. So nobody follows it up. And the judge repeats it again, that there's a problem with that. In fact, what 1074 said, I don't quite understand how the judge got there. I tried to figure it out in my brief. But what 1074 did is limit the challenges for cause in California. It said specifically that challenges for cause in California were limited to if you were a relative or if you were a relative of the defense counsel or if you were a client of the defense counsel or if there was a – there was some other listing of factors that those were the only accepted challenges for cause with respect to those relationships. And that actual statute was repealed prior to his trial. So as far as I can see, there was no statute that limited challenges for cause between – this gets to Your Honor's point – between a sitting juror and her lawyer, the prosecutor. But what is the breadth of the due process argument you're making, which is an implied bias question, and how it fits in with Smith v. Phillips, given – I mean, is it essentially that any time there would be a challenge for cause, there's a due process violation if the juror stays in the jury? No, I don't think I would go that far. I think – I don't think I can separate my implied bias claim from the appearance of applied bias. We have not phrased it as an actual conflict. We did not phrase the claim specifically as an actual conflict between a sitting juror – and maybe I should have, but I didn't. I phrased it as the appearance of a conflict when you have a juror who was and is, under California law, a client of the prosecutor prosecuting the case. But does that mean, to take the due process prong of this, not the ineffective assistance prong of it, that the jury – that the judge should have simply dismissed this person, no matter what the lawyer wanted? Yes. I think that – I think that a judge has the responsibility, independently of the beliefs of the defense counsel or the prosecutor, independently of those beliefs. Because she was lying or because of the conflict? Because there was the appearance of conflict. Because she – he should have inquired. Asked because she was lying. Oh, no. He should have done that, too. He should have done that, absolutely, once she lied directly to him. This was directly to him. Nobody else there. So absolutely, under those circumstances, he should have done it. But he also should have done it when – because all they were determined on – this was important, Your Honor, in this case – is that what all the defense counsel was focusing in on and all the court seemed to be focusing in on was whether or not she was paying the prosecutor money during trial. Under California law, whether you pay the lawyer money or not is not determinative of an attorney-to-client relationship. That was all they focused in on. On California law, she was – I'm sorry, he was her lawyer. But it might have been determinative of her perception of the entire – I mean, it asked whether she was lying as opposed to mixed up. I'm sorry. I didn't quite follow what you're getting at. It might have been determinative of her perception of the situation. On the lying question? Yes. Yes. On the lying question, it could have affected her determination on whether she was lying, the fact of whether or not she was paying or not. I think that's true, Your Honor. I think based on the way it went, it may – I think it's not even unreasonable to assume that, that she may have drawn from the colloquies that happened by the defense counsel to ask questions, because, frankly, he turned to the defense counsel and said, do you want to ask questions, and all he asked, were you paying them money or were you going to keep paying money? And they focused in – for example, the whole focus was in, as long as she doesn't call him again until trial's over, everything's okay. Well, it's not. Everything's clearly not okay. She has gone through half the trial at this point as the – as the client for the prosecutor. Okay, Counsel, we're way over your time. I'm sorry. Do you want to give you a minute or two for rebuttal? Yes. Thank you, Your Honor. Good morning, Your Honor. Pat Wayland, Deputy Attorney General for Respondent Warden in this case. Mrs. Hill didn't lie, and that's why most of the discussion that we just heard was entirely off track. There's no fighting. Well, let's forget the lie for a moment. Answer this question for me. Here you have a juror who has confidence in the law firm that the prosecutor belongs to, calls it for advice during the trial, obviously trusts that firm, and at the same time at the end of the case sends a note to the judge asking who's paying the defense lawyer. Is the defendant paying the defense lawyer or the county? Now, that would suggest to me, and maybe this is a wrong inference, that she has a question about whether she can trust the defense lawyer because she wants to know who's paying him. That's a very bizarre question from a bizarre juror to start with. But don't those two things, that she trusts the prosecutor and she has a question about who's paying the defense lawyer, suggest to you that this is not the kind of a juror that you would want on a first-degree murder trial? Your Honor, I have a problem with the premise of your question because you said several times that Ms. Hill trusted the firm. I think when you look at the record of the various four years with Ms. Hill, what's quite apparent is she had no understanding of the connection between Mr. Rasmus and the prosecutor and her lawyer, Mr. Ralston. Who she trusted was Mr. Ralston. In her mind, her lawyer was Mr. Ralston. Not unlike many people, when they call a law firm, they're agitated if they can't talk to their lawyer. They don't care about the legal niceties of the fact that if you have a lawyer with 500 lawyers in his firm that they're all your lawyer. That may mean something to us lawyers and judges, but it doesn't mean anything to Mrs. Hill. Her lawyer was Mr. Ralston, so I reject the premise that she also trusted Mr. Rasmus. And, in fact, the record shows that she didn't seem to even know who Mr. Rasmus was. At one point, the judge asks her, did you call Mr. Rasmus' firm? And she says, Mr. Who? She doesn't even know that that's the prosecutor she's been listening to for the last couple weeks. Boy, if she's that bad, she shouldn't be on the jury in the first place. Well, Your Honor, I would suggest, based on my trial experience, that is sometimes the exact kind of a defense lawyer would like to have on the jury. Mrs. Hill didn't lie, as the district court and the magistrate pointed out. She was arguably confused, not unlike— The argument that your opponent is making is we don't know if she lied because the defense lawyer just didn't ask any questions that went to the obvious inquiry of why did you say that. Instead, he would seem to be very intent on resuscitating her for some reason instead of trying to find out did she trust this law firm and why did she make these statements. We don't know if she lied. Right. And we don't know. And the question is should there have been an inquiry that wasn't held. There should only have been an inquiry if counsel felt there was a need. And under Strickland, we indulge a very strong presumption that counsel was reasonable. Now, what Mr. Broderick said is that— The only explanation he's given doesn't make sense, right? I disagree entirely. In fact, Mr. Broderick went on and on about the only thing that the declaration tells us is that we wanted women on the jury. And then he disputes that by pointing to the alternate available. The fact of the matter is the far more relevant part of trial counsel's declaration is that he found Mrs. Hill could be fair and impartial. He says that twice in his declaration. He says, after I talked to her on voir dire, I reached the conclusion that she could be fair and impartial. And then later in the declaration, he says, and based on my determination that she could be fair and impartial, I left her on the jury. Now, it is entirely reasonable. It is the essence of trial counsel's representation to make those judgments in court. Here he had an opportunity, not just in the initial voir dire, but also when this matter came up during trial, to actually make a connection with the juror. In fact, he was the one that did most of the questioning with Mrs. Hill when this came up. So he's reading her. He's using all of the skills that trial counsel uses, looking at the juror's body language, judging. Well, maybe, you know, she seems like she's really bending over backwards to try and be fair to me now. That's great. Or maybe he's getting some weird, some vibe from her. Who knows what? But that's what trial counsel does. And in this case, we cannot presume the contrary. We cannot presume that he just made the exact wrong decision based on everything he was reading. And in fact, when the California Supreme Court addressed this, even though they rendered a silent denial, which I would agree with you on, sometimes that does give us more deference rather than less. The fact of the matter is it was not objectively unreasonable, because we can imagine a thousand reasonable explanations for why trial counsel didn't excuse this juror. And the only unreasonable one that we've talked about is this assertion that she lied. The question at this point is should we be imagining anything or should we be having an evidentiary hearing in which the lawyer testifies and the client testifies, not the client, not the client, the defendant, and resolve the credibility dispute between them as to whether, first of all, there was any consultation with the defendant, and second of all, what was the lawyer's reasons? I mean, we don't have the juror available, but we have the other two as to the ineffective assistance claim. That doesn't address the due process claim, but it addresses the ineffective assistance claim. Here's why an evidentiary hearing would be singularly pointless. As I mentioned in the declaration, trial counsel states twice, I found that she could be fair and impartial. There is nothing that Mr. Corgiasso could testify to at an evidentiary hearing that would do anything to undermine trial counsel's determination. That went on in trial counsel's head. Nothing Mr. Corgiasso saw, knew, anything could be relevant to that. If trial counsel made that determination, that's what trial counsel does every day. And so that is quintessentially reasonable. But if there were a hearing and a judge determined that the other things he said, i.e., that he did it because they wanted women on the jury and that he consulted with his client were not true, one might wonder. One might, but it wouldn't undermine the fact that trial counsel made a judgment call, and that's what they do. If you believe that. I beg your pardon? The possibility of the witness may be the trial counsel. There are two reasons to not believe this witness at this point, the witness being the lawyer. One is that his explanation with regard to women didn't make sense, and the other is that he's in direct conflict with his client as to whether they talked to each other. Well, when you look at the declaration, he doesn't say the only reason I kept her on there was we wanted to have women on the jury. He says, I spoke to my client, there's a conflict about that, discussed the possibility of removing her, period. Mr. Corgiasso expressed a desire to keep Ms. Hill on the jury. Mr. Corgiasso says that isn't true, so don't we have to have a hearing? No, because the resolution of that dispute isn't material to why the attorney exercised his judgment to keep her on the jury. He says, he talks about what Mr. Corgiasso's desires and my own determination that the jury could be fair and impartial, I consented. So he precisely says it was because of Mr. Corgiasso's desires. And because he concluded she could be fair and impartial, which he referenced earlier in the declaration. And if you believe that he didn't tell the truth when he said he consulted with Mr. Corgiasso, you might also believe he didn't tell the truth when he said he made a determination on the merits to keep her on because she could be fair and impartial. Maybe he was just ineffective. I'm not saying he was. I'm saying that that's what you determine at a hearing. Well, here's the problem. It is the defendant's burden to overcome the strong presumption that counsel was reasonable, and it's the defendant's burden to show that the state court adjudication of this claim was objectively unreasonable. When the state court adjudicated this claim, they made a determination, which we have to presume occurred under Strickland, that there was some reasonable explanation for this, either that he didn't fall below objective reasonableness under the first prong or that there was no prejudice. And so we can't just come in here today and speculate, well, gee, maybe he might have been. We don't have to come in and speculate anything. The state court could have given him a hearing. They didn't have to just give him a silent denial. They could have written an opinion. They could have taken the case seriously. And if they don't, a federal court can. Well, Your Honor, I reject the premise that the fact that there's no reason to opinion suggests that the state court didn't take it seriously. I don't believe that when seven judges of the California Supreme Court take an oath to uphold the state and federal constitution that they're not being serious. Having a hearing when there's a dispute of fact is the way courts normally operate. There was no dispute of fact before the California Supreme Court because these competing declarations were not submitted to them. Turning to the due process violation allegation, there simply can be no due process violation if a defendant doesn't object to the procedure that allegedly gives rise to the due process. It kind of bothered me. I suppose if you have this juror who says, you know, I'm flawed here. She says, well, I wouldn't, I don't believe cops. I just don't believe them. If they take the stand, I'm not going to believe a word they say. And I was a, and the defense, the prosecutor used to be my lawyer. And so then the defense lawyer says, well, you know, I just assume this lady served on this jury. So he doesn't say anything at all about it. And suppose they let her serve. He gets convicted. Can the defense now come up and say, well, it was obvious, you know, she was a prejudiced juror. She was unfair. Or is it a matter, is it within the lawyer's control? What's the answer to that? The answer is easy. And this is where I differ from Mr. Broderick. Whatever we may say about the ineffective assistance counsel claim in your hypothetical, Mr. Broderick said that his rule would be that the judge must excuse her even over the objections of defense counsel. Think about that. That would turn due process on its head. Here you have trial counsel, presumptively reasonable, making the decision that, man, I'm getting a good feeling from this juror. This juror is going to be our juror. I don't care what she's talking about. She knew the cop, whatever. I got a good feeling here. And the judge is telling me we have to kick her. No, I'm going to be screaming like crazy. And it's going to be told that I was compelled to let her go. That's going to be the basis of the due file. They'll let the judge have to kick her. You know, most of these cases, I would suspect, arise after the conviction, and then somebody investigates the jury or something, and they find out that there was a biased jury, and then you say, well, you're entitled to a fair and unbiased jury and all that. You get that law. But where the supposed defect occurs during the trial, I wonder if it's different, or do we just ignore it and say, well, it's a fair jury? In California, the juror's inability to be fair and impartial must appear as a demonstrable reality from the trial court record. And if it does and the lawyer doesn't object, is there a case that says that that waives the due process objection? If the lawyer doesn't object where something appears. Well, it would be the case, aside in my brief, Your Honor, that there can be no due process unless you're compelled to go through it. You can't have due process. You can't have a due process. There is a case that says that if a lawyer fails to object, there cannot be a due process violation as a result of a biased juror. Yes, Your Honor. Let's let's start with U.S. V. Gagnon. Yeah. Page 15 and 16 are a series of cases where the U.S. Supreme Court has made clear in numerous contexts that we're asking about this context, not in not in general. Is there a case? You know, it's not a terrible thing to have to say no. If there's no case, there's no case. Your question is asking whether or not there's a specific case addressing a due process violation for a lawyer to failure to object, whether the jurors impartiality or partiality appears in the record. I am aware of nothing from the United States Supreme Court on that point. Your Honor. Either way. Either way. Are you aware of anything from the Ninth Circuit either way? No. Or any circuit? No. OK. So probably, Judge Thompson, there's no case. That would, of course, indicate that it's not clearly established. Actually, Your Honor, Williams v. Taylor that he cited in his brief, in that case, there was no objection by defense counsel. And Justice Kennedy addresses whether or not that waives the due process argument. And Williams v. Taylor? Williams v. Taylor is the one cited in the brief. Right. And he says it does not because there are all sorts of explanations why it wouldn't be a waiver. And that's why in Williams v. Taylor, he actually remanded. You don't happen to know what page, do you? No, unfortunately, I don't know. It started on 420. It wasn't very long. But in both cases in which they challenged the jurors, it's towards the end of the opinion because that's when he actually gets into the substance of it. In both cases, they didn't challenge the main witness, who was the ex-husband of a juror, and the second one was the prosecutor in Williams, represented the jury in her uncontested divorce. And there were no objections to either of those. But wasn't the problem in that case, in this one, I'm looking quickly at it now, that they, unlike here, the problem, the jurors' problem didn't come out at the trial? Right. But they had raised, my understanding was that the respondents or whatever posture they were in that case had raised that there had been no objection. And therefore, it had to have been put in place. But no objections because they didn't have the information. I don't know if that's true, Your Honor. I thought they did have some information. I think they did have some at some point. But that's the case. I'm not aware of any case that says, and I've looked at just about everywhere, any case that says the failure to object necessarily waives it. I do know, Your Honor, that the ABA's – I'm sorry. Even from ineffective assistance of counsel inquiry. I'm sorry. Say that again. It would not from an ineffective assistance of counsel inquiry. That would be the quintessential ineffective counsel that did not object. Right. It would be ineffective for not doing it. Right. But if you analyze it on ineffective assistance, of course, the failure to object does not. Right.  But I'm due process to – In that Gwendolyn v. Taylor, it says, in ordering an evidentiary hearing on juror bias and prosecutorial misconduct claims, the district court concluded that the factual basis of the claims was not reasonably available to Petitioner's counsel even during State habeas proceedings. And the court of appeals' view was that the State habeas should have discovered it, but nobody claims they had it. Okay. Then my apologies. The other case I read this morning was the other case they cited, Fields v. Woodford. That's a Ninth Circuit case from this court. But the short answer is there is no case that I'm aware of that says the failure to object necessarily gives up any due process claim. I want to correct a couple things real quickly. Counsel had indicated at some point she said Mr. Who. That's not correct. There's no statement of that anywhere in the record from Ms. Hill. The – with respect to the presumption, counsel had indicated that defense has some burden. Again, this is in summary judgment context in which summary judgment was awarded against us. And so all facts that are in favor – should be in Mr. Corgiasso's favor. So we have to assume on the procedural posture of this case that his declaration is accurate, not the defense counsel's. That goes as to whether or not it should be random for an evidentiary hearing. But again, Your Honor, I agree. The evidentiary hearing is only if you get to the question of ineffective assistance. I still believe that in this particular case – and that's what I want to end with. That's why it was important that I correct the issue on 1074 of the penal code, because what that section did in California prior to his trial was that section specifically limited a court – specifically limited a court from finding certain challenges for cause based on consanguinity and a client-to-client relationship. It said if it doesn't fit one of those enumerated areas, you can't challenge them for cause. Period. So then it's just left to the counsel to do peremptory challenges. That statute was repealed five or six years before Mr. Corgiasso's trial. So there was no limitation in California law on the court, the trial court, from making a finding. And a fair reading of this record is the trial court in this case was only going on the idea – and I think the reading is would have excused her – had he been told what you've been told, that under California law she was the prosecutor's client during trial. But he was told that. I'm really mystified by what you're saying. He knew that she was the prosecutor's client during trial. I'm saying was and is. Under California law, she was the client during the pendency trial. And he thought that there was a statute forbidding this, which there wasn't. Right. And he still thought that, I gather, that if the lawyer wanted her on a jury, he was going to leave her on a jury. No, he thought – that's not correct, Your Honor. He thought – you're right that he thought there was a statute that forbid it. But he thought that it only forbid it if she was a client during trial. And he thought that she wasn't. But she was a client during trial. She was. Under California law, she was still his client during trial. She was still his client. Certainly his client, which he called the lawyer. I don't understand why it matters what he thought about a law that never said what he thought it said and doesn't exist now, at the time. It just doesn't matter. It does matter in the sense that it matters on Judge Thompson's question on whether the judge had a responsibility to ensure due process, independent of what the defense counsel wanted to or didn't want to do. That he had a responsibility, under California law, to determine that all the jurors had the appearance of not being biased, and she was currently a client of the prosecutor, and that had the appearance, regardless of what the defense counsel, if he liked her dress, if he liked her hairdo, whatever it was, that he had an obligation as a trial judge to make sure that she didn't sit on this man's jury. Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted. The Court will take a brief recess before the final case of the morning. All rise. The Court stands in recess. 21-7.
judges: Reinhardt, Thompson, Berzon